## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 13-0712** (Putnam County 13-MAP-4)

**Paul E. Carbonneau,**
**Defendant Below, Petitioner**

**FILED**

August 29, 2014

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Paul E. Carbonneau, by counsel Timothy J. LaFon, appeals the June 12, 2013, final order of the Circuit Court of Putnam County affirming his conviction for one count of domestic battery in violation of West Virginia Code § 61-2-28(a).[1] The State of West Virginia, by counsel Laura Young, filed a summary response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standards of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On December 25, 2012, around 4:30 or 5:00 p.m., Deputy C.M. Savilla of the Putnam County Sheriff's Department responded to a 911 call of a domestic disturbance at petitioner's

---

[1] West Virginia Code § 61-2-28(a) provides as follows:

*Domestic battery.* -- Any person who unlawfully and intentionally makes physical contact of an insulting or provoking nature with his or her family or household member or unlawfully and intentionally causes physical harm to his or her family or household member, is guilty of a misdemeanor and, upon conviction thereof, shall be confined in a county or regional jail for not more than twelve months, or fined not more than five hundred dollars, or both.

W.Va. Code § 61-2-28(e) further provides that the phrase "family or household member," as used in the above section, is defined in W.Va. Code § 48-27-204. In that provision, "family or household member" means, in relevant part, "persons who: … (5) are or were residing together in the same household."

1

residence in Hurricane, West Virginia. Petitioner lived at that residence with T.B.[2] and her two minor children—A.B. (fourteen years old) and C.B. (eight years old). Petitioner had resided in the same household with T.B. and her children for approximately seven years. On that date, petitioner told the officer that petitioner and T.B. had been in a verbal argument. The officer, noticing that A.B. was crying and distraught, spoke with her in private. A.B. told the officer that petitioner had struck her several times in the face during an argument between petitioner and her mother. The officer witnessed redness on A.B.'s face and neck. Petitioner was arrested and charged with one count of domestic battery.

A referral of child abuse was made to Child Protective Services ("CPS") regarding the December 25, 2012, incident. Intake worker Nancy Booth was assigned to the case. Ms. Booth met with various witnesses, including A.B., on December 26, 2012, one day after the incident, and reviewed the matter consistent with her duties. After completing her investigation, Ms. Booth compiled a report on February 19, 2013, in which reported that she could not substantiate the allegations of abuse by petitioner against A.B. Ms. Booth determined that there were inconsistencies in A.B.'s story, including A.B.'s claim that petitioner hit her in the face several times where A.B. had only minimal scratching the next day. Also, an in-home care worker had overheard A.B. state that if petitioner were removed from the home her biological father, then incarcerated, could return to the family.

Following a bench trial in magistrate court on March 8, 2013, petitioner was convicted of one count of domestic battery. On March 14, 2013, he appealed the conviction to the circuit court, which held a bench trial *de novo* on May 24, 2013. A.B. testified that, during the argument between petitioner and her mother, petitioner struck her "multiple times" in the face. A.B. explained, as she had to the officer on the day of the incident, that she stepped in between petitioner and her mother, and that is when petitioner struck her. A.B. was cross-examined as to the incident, her prior statements regarding the incident, and those issues raised by Ms. Booth in her report. The officer testified that on December 25, 2012, petitioner admitted to arguing with T.B., but he maintained that the argument was verbal, not physical. The officer testified that A.B. appeared distraught and crying. He spoke to her privately, and A.B. told him that petitioner had "punched her several times." The officer witnessed redness on A.B.'s face area consistent with that claim. Several pictures related to the incident were admitted into evidence without objection, including pictures of A.B. at the time of the incident.

Relevant to this appeal, the CPS worker testified as to her investigation and report regarding the incident between petitioner and A.B. The CPS worker was permitted to testify as to her report, including the inconsistencies she detailed in A.B.'s story, and her report was admitted into evidence. During direct examination, petitioner's counsel asked the CPS worker whether she "ultimately reach[ed] a conclusion as to the veracity or whether [A.B.] was telling the truth about

---

[2] Because of the sensitive nature of this case, we use the initials of the victim and those persons related to the victim. Here, however, petitioner is not related to, nor does he share the same name with, the victim. *See State v. Edward Charles L.,* 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victim [is] related to the appellant, we have referred to the appellant by his last name initial." (citations omitted)).

this incident?" The State immediately objected on grounds of relevance and inadmissible opinion testimony. Petitioner countered that the CPS worker was a "quasi-expert" and could give opinion based upon her "expertise." The court sustained the objection, noting that the CPS worker had not been qualified as an expert and no foundation had yet been laid for her opinion on the issue. The CPS worker did not answer the question, nor did petitioner's counsel make an offer of proof on the record as to her answer.

At the close of testimony, the circuit court stated that the case rested on a determination of credibility. The court then found A.B. more credible than petitioner, who had testified that despite a verbal argument with T.B., he had not hit nor attempted to hit anyone. The circuit court convicted petitioner of domestic battery and sentencing him to ninety days in jail, suspended, and imposed one year of probation. This appeal followed.

This Court reviews orders by a court after a bench trial as follows:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review. Syllabus Point 1, *Public Citizen, Inc. v. First Nat. Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996).

Syl. Pt. 1, *State v. Mechling*, 219 W.Va. 366, 368, 633 S.E.2d 311, 313 (2006).

On appeal to this Court, petitioner raises two assignments of error. First, petitioner asserts that the circuit court abused its discretion in excluding the opinion testimony of the CPS worker as to the veracity of A.B.'s version of the incident. According to petitioner, Ms. Booth had investigated this matter thoroughly and had collected evidence that was critical to the facts at issue in petitioner's case. In support of his position, petitioner cites Rule 701 of the West Virginia Rules of Evidence,[3] as well as our holdings in *State v. Jameson*, 194 W.Va. 561, 568, 461 S.E.2d 67 ("The determination of whether a witness has sufficient knowledge of the material in question so as to be qualified to give his opinion is largely within the discretion of the trial court, and will not ordinarily be disturbed on appeal unless clearly erroneous.") and *Hatcher v. McBride*, 221 W.Va. 5, 650 S.E.2d 104 (2006) (affirming decision to allow a judge to testify at a sentencing hearing as to the defendant's dangerousness, due to the judge's past experience with the defendant as juvenile and observations of the defendant's demeanor.).

This Court has held as follows:

---

[3] West Virginia Rule of Evidence 701 provides the following:

> If the witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

"If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal." Syl. Pt. 1, *Horton v. Horton,* 164 W.Va. 358, 264 S.E.2d 160 (1980).

Syl. Pt. 10, *State v. McIntosh*, 207 W.Va. 561, 534 S.E.2d 757 (2000). Offers of proof both permit a trial court to reevaluate its decision in light of the actual evidence and allow an appellate court to determine whether the exclusion of evidence rose to the level of prejudicial error. *State v. Blake*, 197 W.Va. 700, 708, 478 S.E.2d 550, 558 (1996).

In the case *sub judice*, petitioner's counsel asked the CPS worker whether she "ultimately reach[ed] a conclusion as to the veracity or whether [A.B.] was telling the truth about this incident?" Before the CPS worker could respond, the following exchange occurred between the State, the court, and petitioner's counsel:

> THE STATE: Your Honor, I'm going to object to the relevance. This is for the Court to decide. I don't see that you need an opinion of a CPS worker.
>
> THE COURT: Yeah, I don't know what a lay opinion—well, what's your position, Mr. LaFon?
>
> PETITIONER'S COUNSEL: I think she has expertise in investigating these types of events. She's a quasi-expert. And if it assists the Court, then it's allowable. It's the standard for expertise and her expertise, she investigated and reached certain conclusions based thereupon.
>
> THE STATE: I don't believe a CPS worker is an expert in domestic violence. They might be in child abuse. But domestic battery can be different from child abuse.
>
> THE COURT: I'm not going to—I mean, based on what—I mean, first of all, I don't think Ms. Booth has been qualified as an expert or recognized here as an expert in this matter, and I'm not sure that there has been a foundation laid for her to offer these opinions, and I'm going to sustain the objection and not allow Ms. Booth to give that type of opinion testimony.

Immediately following this exchange, petitioner's counsel proceeded into another line of questioning with the CPS worker. Therefore, she did not present her opinion to the circuit court, and no offer of proof was made as to what her opinion would have been in the record before this Court. In the absence of such an offer of proof, this Court will not review the matter on appeal.

That said, even if the alleged error had been properly preserved for appeal, we have consistently emphasized the significant discretion afforded to trial courts in making evidentiary rulings. *State v. Wood*, 194 W.Va. 525, 534, 460 S.E.2d 771, 780 (1995) ("Whether a witness is

qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused."). We see no abuse of discretion in the circuit court's decision to exclude opinion testimony. A.B. testified, and the trier of fact had the opportunity to witness her testimony and determine her veracity.

In his second and final assignment of error, petitioner argues that his conviction was clearly against the weight of the evidence presented at trial. According to petitioner, the only evidence offered by the State to prove his guilt beyond a reasonable doubt was A.B.'s testimony. Petitioner avers that A.B. was incredible as a witness because she was a teenager in the middle of family turmoil. Further, petitioner argues that if he had struck A.B. several times she would have had bruises or welts as a result. Petitioner also argues that his own testimony completely contradicted A.B. and the officer, and the lower court failed to properly consider the CPS worker's report.

In essence, petitioner's challenges the sufficiency of the evidence at trial. In reviewing a defendant's challenge to the sufficiency of the evidence to convict, we have stated that:

> "[t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. Juntilla*, 227 W.Va. 492, 711 S.E.2d 562 (2011). We have also stated that

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 2, *State v. McFarland*, 228 W.Va. 492, 721 S.E.2d 62 (2011). Applying this standard to our consideration of the parties' arguments and the record on appeal, we see no reason to reverse the conviction on a sufficiency of the evidence challenge. A.B. testified that petitioner hit her several times during the argument with her mother, and the officer testified that A.B. exhibited

red marks in the area where she claimed to have been hit. Viewing this evidence alone in the light most favorable to the prosecution and granting all credibility assessments in favor of the prosecution, the evidence was sufficient for the circuit court, sitting as trier of fact, to have convicted petitioner of domestic battery beyond a reasonable doubt.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** August 29, 2014

**CONCURRED IN BY:**
Chief Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II